**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WADE GUENTHER, *

Plaintiff, *

v. *

WILLIAM J. HERRMANN ET AL., * Civil No. 24-3171-BAH

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Wade Guenther ("Plaintiff") brought suit against William J. Herrmann ("Herrmann") and William M. Cai ("Cai") (collectively, "Defendants"), alleging a violation of the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. § 34:11-4.1 et seq. ECF 1 (complaint). Pending before the Court is Plaintiff's motion for default judgment as to Herrmann, ECF 12, and Cai's motion to dismiss, ECF 17. Plaintiff filed a response to the motion to dismiss, ECF 18, to which Cai filed a reply, ECF 19. Several of the filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the motion to dismiss is **GRANTED** and the motion for default judgment is **GRANTED** as to liability and will be referred to a Magistrate Judge to determine the amount of damages.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff worked for Wilshire Phoenix Funds, LLC ("Wilshire Phoenix") "as Head of Strategy from approximately January 6, 2021, until September 29, 2023." ECF 1, at 2 ¶ 8.

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

While the precise nature of Wilshire Phoenix's business is not clear from the complaint, Plaintiff alleges that Defendants were "Managing Partners of Wilshire Phoenix" "[a]t all relevant times" during his employment there. *Id.* ¶ 10. Both Herrmann and Cai are sued in their individual capacities. *Id.* at 1.

Plaintiff alleges that Defendants promised to pay him an annual salary of $162,500.00 for his work for Wilshire Phoenix, but that in September 2021 Defendants stopped paying his salary "due to Wilshire Phoenix's financial difficulties." *Id.* at 2 ¶¶ 11–12. From that time to the end of his employment with Wilshire Phoenix, Plaintiff avers that Defendants "repeatedly represented to Plaintiff that all outstanding salary payments would be made and urged him to continue working for Wilshire Phoenix." *Id.* ¶ 13. Plaintiff alleges that Defendants "made two 'catchup' payments of $5,000.00 each to Plaintiff in February and March 2022," but that on December 14, 2022, he sent Defendants an email "advising them that they owed him 'almost $200k' and requesting Defendants pay him $25,000 'as a good faith effort that you plan on correcting this situation.'" *Id.* at 2–3 ¶¶ 14–15. Plaintiff alleges that Cai responded to the email and refused to make the $25,000 payment, stating that "'[o]ur bank account has been at zero or below in more days than not this year.'" *Id.* at 3 ¶ 16. Plaintiff argues that "Defendants knowingly and without good faith failed and refused to pay Plaintiff all the wages he rightfully earned." *Id.* at 4 ¶ 23.

Plaintiff seeks an order directing Defendants to pay "all wages owed," *id.* at 3 ¶ 17, calculated by Plaintiff to be $322,500.00, *id.* at 4 ¶ 1. He additionally requests an award of "liquidated damages in an amount equal to two times the amount of all wages owed, in accordance with N.J. Stat. § 34:11-4.10(c)." *Id.* ¶ 2. Plaintiff also requests attorneys' fees and costs in the amount of $14,398.50 and $1,082.37, respectively. *Id.* ¶ 4; ECF 12, at 6. Finally, Plaintiff seeks pre- and post-judgment interest and "such other legal and equitable relief as the Court deems appropriate." ECF 1, at 4 ¶¶ 5–6.

### B. Procedural History

Plaintiff filed the complaint on October 31, 2024. ECF 1. Plaintiff served the summons on Herrmann on May 17, 2025. ECF 7. After Herrmann failed to file a responsive pleading, the Clerk entered default against him on June 12, 2025. ECF 11. Plaintiff filed the instant motion for default judgment as to Herrmann on June 12, 2025. ECF 12. Plaintiff then served the summons on Cai on August 13, 2025. ECF 16. Cai filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction on February 5, 2026. ECF 17.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2)

"[A] Rule 12(b)(2) challenge" to personal jurisdiction "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

"This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, Civ. No. JRR-24-177, 2024 WL 4792116, at *2 (D. Md. Nov. 14, 2014) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). In resolving a motion brought pursuant to Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson*, 816 F.3d at 267)).

**B. Federal Rule of Civil Procedure 55(b)(2)**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may then conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai*

*Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

## III. <u>ANALYSIS</u>

The Court will first address the motion to dismiss and then the motion for default judgment.

### A. Cai's Motion to Dismiss for Lack of Personal Jurisdiction

Cai argues that this Court lacks personal jurisdiction over him because he "is not domiciled in Maryland, lacks continuous and systematic contacts with Maryland, and has not purposefully availed himself of the privilege of conducting activities within Maryland that could give rise to Plaintiff's New Jersey wage claim." ECF 17, at 1. Plaintiff does not argue to the contrary, instead expressly "consent[ing] to Cai's dismissal." ECF 18, at 2. The motion can be granted on that basis alone. Indeed, considering the merits of the motion to dismiss, the Court agrees that it lacks personal jurisdiction over Cai.

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "The Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Thus, the "statutory inquiry merges with [the] constitutional inquiry." *Id.* at 396–97 (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996)).

This Court possesses neither general nor specific personal jurisdiction over Cai. "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). A court's exercise of general jurisdiction is confined to "a limited set of affiliations." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Neither party contends that Cai is domiciled in Maryland, and therefore this Court does not have general personal jurisdiction over him.[2]

"If [a] defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d at 132 (citing *Daimler AG*, 571 U.S. at 126–27). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty*, 582 U.S. 255, 264 (2017). Cai's contacts with the forum state appear to be limited to his childhood and occasional present-day visits with his mother, who lives in Maryland. ECF 17-2 (affidavit of William W. Cai), at 1–2 ¶¶ 4, 7. Cai asserts that "Wilshire Phoenix did not have offices in Maryland, was not registered to do business in Maryland, and to the best of [his] knowledge and understanding, had no direct customers located in Maryland during [his] tenure." *Id.* at 2 ¶ 9. Nor did Plaintiff conduct his work for Wilshire Phoenix in Maryland. Rather, "Plaintiff worked remotely from his home in New Jersey at all relevant times." ECF 1, at 2 ¶ 9. Plaintiff's claim does not arise

[2] The parties appear to disagree about whether Cai is domiciled in New York or Germany, but his precise domicile does not change the analysis here. *Compare* ECF 1, at 1 ¶ 3, *with* ECF 17-2, at 1 ¶¶ 2–3.

from Cai's minimal contacts with the forum state, and this Court therefore does not possess specific personal jurisdiction over Cai. The motion to dismiss will be granted.

**B. Plaintiff's Motion for Default Judgment as to Herrmann**

*i. Entry of Default Judgment Is Not Barred by the* Frow *Doctrine.*

Plaintiff seeks default judgment only against Herrmann. ECF 12. Default judgment is typically not appropriate against a single defendant in a multi-defendant action where a complaint asserts "the joint and several liability of all of the defendants." *See Queen v. Ctr. for Sys. Mgmt., Inc.*, Civ. No. ELH-10-3518, 2012 WL 4058044, at *2 (D. Md. Sept. 13, 2012) (report and recommendation by Magistrate Judge Gesner adopted by Judge Hollander on October 3, 2012); *see also Leighton v. Homesite Ins. Co. of the Midwest*, 580 F. Supp. 3d 330, 332–33 (E.D. Va. 2022). Rather, to avoid inconsistent or potentially "absurd" results, the Supreme Court has explained that the proper course of action "is simply to enter a default" against the defaulting party, and "proceed with the cause upon the answers of the other defendants." *Frow v. De la Vega*, 82 U.S. 552, 554 (1872). The Fourth Circuit has extended the rule in *Frow* to cases where liability is joint and several, as well as to certain instances where codefendants' liability is alleged to be "closely interrelated." *U.S. ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967).

Here, Plaintiff asserts in his reply to Cai's motion to dismiss that Defendants "are jointly and severally liable." ECF 18, at 1. Moreover, despite not stating as much in the complaint itself, *see* ECF 1, Plaintiff avers that Defendants' liability is also "closely interrelated." *Peerless*, 374 F.2d at 945. Plaintiff alleges a single count violation of the NJWPL against both Defendants and asserts that each was his employer during the relevant time. ECF 1, at 3 ¶ 20. Plaintiff's motion for default judgment therefore requires application of the rule laid out in *Frow*.

Under the *Frow* doctrine, when "a defending party establishes that [a] plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant." *See Peerless*, 374 F.2d at 945 (internal citations omitted). Therefore, when a court dismisses a case as to a non-defaulting codefendant, the proper course ordinarily requires dismissal as to the defaulting codefendant as well. *See, e.g.*, *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) ("[I]f an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants." (citing *Frow*, 82 U.S. at 554)); *Richardson v. Bostick*, Civ. No. 5:11–CT–3045–FL, 2013 WL 3166398, at *4–5 (E.D.N.C. June 20, 2013) (declining to enter default judgment because the defaulting defendants may benefit from potential defenses held by the answering defendants (citing *Peerless*, 374 F.2d at 944)). The Fourth Circuit recently extended this application of the *Frow* doctrine to "non-merits grounds for dismissal." *See AdvanFort Co. v. Zamil Offshore Services Co.*, 134 F.4th 760, 769 (4th Cir. 2025) (upholding the lower court's dismissal of an action against a defaulting codefendant when the answering codefendant successfully moved for dismissal under forum non conveniens).

However, despite the Court's dismissal of Plaintiff's claim against Cai for want of personal jurisdiction, this dismissal does not "inure[] to the benefit" of the defaulting defendant, Herrmann. *Peerless*, 374 F.2d at 945. The *Frow* rule does not apply where "the nondefaulting defendant's defense is a personal one—infancy, for example—and would not be available to the defaulting defendant." *Arbor Care Tree Experts, Inc. v. Arbor Care Tree Experts & Outdoor Services*, Civ. No. ELH–10–1008, 2011 WL 219636, at *2 (D. Md. Jan. 21, 2011) (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure § 2690, at 76 (3d ed. 1998)); *see also Farm Fresh Direct By A Cut Above, LLC v. Downey*, Civ. No. ELH–17–1760, 2017 WL 4516548, at *4 (D. Md. Oct. 6, 2017). This approach comports with the *Frow* Court's goal of avoiding "logically inconsistent adjudications as to liability." *In Re Uranium Antitrust*

*Litigation*, 617 F.2d 1248, 1257–58 (7th Cir. 1980) (reasoning that "when different results as to different parties are not logically inconsistent or contradictory, the rationale for the Frow rule is lacking"); *see also Drill South, Inc. v. Int'l Fidelity Ins. Co.*, 234 F.3d 1232, 1237 n.8 (11th Cir. 2000).

In the present case, the defense Cai asserted as the non-defaulting codefendant is personal to him. Herrmann, unlike Cai, is a Maryland resident and subject to general personal jurisdiction in this forum. ECF 1, at 1 ¶ 2; ECF 7 (summons reflecting Herrmann was personally served at an address in Maryland). Granting dismissal as to Cai alone does not create a risk of inconsistent judgments because Herrmann, even if he had filed responsive pleadings, could not have enjoyed the same defense.

*ii. Plaintiff Alleges Sufficient Facts to Support Entry of Default Judgment As to Liability.*

Since dismissal of Plaintiff's claim against Herrmann is not warranted by the *Frow* doctrine, the Court will now consider whether Plaintiff has pled sufficient facts to permit entry of default judgment against him. As a threshold matter, the Court must determine whether it has subject matter jurisdiction over the action. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019) ("[C]ourts must always assure themselves of subject matter jurisdiction before reaching the merits, even if the parties have not raised it." (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006))). And while "the Fourth Circuit has not determined whether a district court should examine the existence of personal jurisdiction before entering a default judgment[,] . . . 'it [is] prudent to determine, prior to entry of a default judgment,' whether it can exercise personal jurisdiction over a defendant." *Aerotek, Inc. v. Bernard Irby Inc.*, 670 F. Supp. 3d 230, 232 (D. Md. 2023) (quoting *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *2–3 (D. Md. Sept. 13, 2019)).

Here the Court is satisfied that it possesses both subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. The Court has subject matter

jurisdiction pursuant to 28 U.S.C. § 1332 since there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000. *See* ECF 1, at 1 ¶¶ 1–2; *id.* at 3–4 ¶ 17 (identifying Plaintiff as a New Jersey resident, Cai as a New York resident, and Herrmann as a Maryland resident,[3] and requesting damages in excess of $322,500.00). And as noted *supra*, at Section III.B.i., Herrmann is subject to general personal jurisdiction in this forum as a Maryland resident.

Before entering default judgment, the Court must "determine whether the well-pleaded allegations in [the] complaint support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd*, 822 F.2d 56 (table), 1987 WL 36124 (4th Cir. 1987)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in the context of default judgments. *See, e.g.*, *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).

---

[3] The Court is cognizant of the fact that "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998) (internal citations omitted). Of course, though "[d]omicile and residence are not synonymous, '[] the two typically coincide.'" *Windward Bora LLC v. Browne*, 110 F.4th 120, 124 n.5 (2d Cir. 2024) (quoting 13E Wright, Miller & Cooper, Federal Practice & Procedure § 3612, at 527 (3d ed. June 2024 Update)). Here, Plaintiff alleges that Hermann is both a "resident" and a "citizen" of Maryland. ECF 1, at 1–2 ¶¶ 2, 4. Since "the facts alleged in the complaint are taken as true," the Court finds that "the complaint alleges sufficient facts to invoke subject matter jurisdiction" since it properly alleges completely diversity. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see also WG/Welch Mech. Contractors, LLC v. Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Loc. Union 100 - Sheet Metal Div.*, 684 F. Supp. 3d 432, 437 (D. Md. 2023) ("To satisfy statutory diversity pursuant to 28 U.S.C. § 1332, . . . a complaint *must on its face allege* complete diversity[.]") (emphasis added).

A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Id.* At the same time, a "complaint will not be dismissed," or default judgment denied, "as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014). The party moving for default judgment has the burden to "show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).

As an initial matter, the Court is satisfied that Plaintiff properly served Herrmann by way of personal service. ECF 7 (reflecting personal service on Herrmann at an address in Towson, MD on May 17, 2025); *see also* Fed. R. Civ. P. 4(e)(2)(A) (permitting service by delivery of "a copy of the summons and of the complaint to the individual personally"). As to liability, the complaint must contain sufficient facts to support Plaintiff's cause of action under the NJWPL such that he "has a more-than-conceivable chance of success on the merits." *Owens*, 767 F.3d at 396. "The New Jersey Wage Payment Law ('NJWPL') sets forth requirements as to an employer's timing and mode of payments to his employee. . . . The NJWPL confers a private cause of action on employees for an employer's failure to pay wages according to its requirements." *Mahanor v. Berkley Life Sciences*, Civ. No. 21-18981, 2022 WL 2541773, at *16 (D.N.J. July 7, 2022) (internal citations omitted).

To support a claim under the NJWPL, a plaintiff must first allege facts sufficient to show that the defendant was their employer within the meaning of the statute. *See* N.J. Stat. § 34:11-4.1(a) ("For the purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation."). The plaintiff then must allege facts demonstrating that the employer failed

to "pay the full amount of wages due to his employees at least twice during each calendar month" as required by statute. *Id.* at § 34:11-4.2. Finally, liquidated damages are not available if the defendant employer "shows to the satisfaction of the court that the act or omission constituting the violation was an inadvertent error made in good faith . . . and the employer acknowledges that the employer violated the law and pays the amount owed within 30 days of notice of the violation." *Id.* at § 34:11-4.10(c).

The factual allegations in the complaint provide sufficient detail to establish Herrmann's liability under NJWPL. First, Plaintiff pled facts demonstrating Defendants' status as his employer within the meaning of the statute. ECF 1, at 2 ¶ 10 ("At all relevant times, Herrmann and Cai were Managing Partners of Wilshire Phoenix."); *see also* N.J. Stat. § 34:11-4.1(a); *Ortez v. Beta Elec. ELP, LLC*, No. 23-CV-3693 (JXN)(MAH), 2025 WL 2169973, at *5 (D.N.J. July 31, 2025) (noting that the "NJWHL also provide[s] for individual liability against employers"). Plaintiff then alleged that Defendants failed to pay Plaintiff any wages at all "[b]etween September 2021 and the end of Plaintiff's employment," approximately two years later, apart from two standalone $5,000 "catchup" payments. ECF 1, at 2 ¶¶ 8, 13–14. These allegations, which must be accepted as true for the purposes of deciding this motion, are sufficient to show that Defendants did not pay Plaintiff as required by the NJWPL. *See* N.J. Stat. § 34:11-4.2 (requiring bimonthly wage payments). Finally, Plaintiff seeks liquidated damages and alleges that Defendants' failure to pay him was not made in good faith. ECF 1, at 3 ¶ 18. Plaintiff has pled facts showing that Defendants' nonpayment was not "an inadvertent error," but rather an intentional choice made in light of financial difficulties at Wilshire Phoenix. *Id.* at 3 ¶ 16 (quoting an email from Cai in which he refused to pay Plaintiff a portion

of the owed wages and referenced the low balance on Wilshire Phoenix's bank account). Plaintiff may therefore recover liquidated damages.[4]

*iii. Plaintiff Fails to Provide Adequate Support for the Requested Damages.*

While the Court finds Plaintiff entitled to default judgment on Herrmann's liability, the record before the Court fails to establish that Plaintiff is entitled to the requested damages. "On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested." *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012); *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases in which damages were awarded after an entry of default judgment and without a hearing, based on affidavits, electronic records, printouts, invoices, or other documentary evidence). The Court must be able to "review[] competent evidence in support of this figure." *See Int'l Painters & Allied Trades Indus. Pension Fund v. 3 R Painting & Contracting Co.*, Civ. No. RDB-12-272, 2013 WL 424694, at *7 (D. Md. Jan. 31, 2013) (awarding $114,269.54 in unpaid contributions where the Assistant to the Fund Administrator attested to, *and the Court verified*, the plaintiff's calculation, as illustrated in the affidavit).

Here, while Plaintiff's allegations are unrebutted, there is little evidence in the record for the Court to independently review and verify the legitimacy of Plaintiff's damages calculation. The sole evidence Plaintiff offers in support of his wage-based damages claim is his sworn declaration. ECF 12-1.[5] His declaration details the wages to which he was entitled

---

[4] The Court notes, however, that the award of liquidated damages is not mandatory, despite Plaintiff's assertion to the contrary. ECF 12, at 3; *see also* N.J. Stat. § 34:11-4.10 ("[T]he employee *may* recover in a civil action . . . an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due . . . ." (emphasis added)).

[5] Plaintiff filed a replacement affidavit at ECF 13, which is identical to the affidavit at ECF 12-1 in all respects except that it contains his signature.

and never received during his employment with Wilshire Phoenix. *Id.* He does not, however, provide any additional evidence in support of the asserted damages such as, for example, the email exchange he quoted in both the complaint and his affidavit, paystubs from the period of employment in which Defendants did pay him, or records indicating the hours he spent working for Wilshire Phoenix. To credibly establish that Plaintiff is entitled to $967,500, Plaintiff must provide more than a single affidavit asserting the amounts owed.[6] *Cf. Select Specialty Hosp. – Quad Cities, Inc. v. WH Admin'rs, Inc.*, Civ. No. PX-18-3586, 2020 WL 4569521, at *6 (D. Md. Aug. 7, 2020) (finding evidence adequately supported the amount sought where, in support of the requested award, Plaintiff submitted an invoice detailing the services and care provided to the patient); *Lopez v. Lawns 'R' Us*, No. DKC-07-2979, 2008 WL 2227353, at *1 (D. Md. May 23, 2008) (awarding damages under Maryland's wage collection law where Plaintiff "maintained records of the hours he worked and the pay he received").

Without more, the Court has no competent evidence to review in support of the requested amount and cannot verify Plaintiff's calculation. *See Villatoro v. CTS & Assocs., Inc.*, Civ. No. DKC-14-1978, 2015 WL 6468062, at *3 n.2 (D. Md. Oct. 23, 2015) ("Some evidence or more detailed affidavits are required."). For those reasons, the Court will refer the matter to a Magistrate Judge for factfinding and conclusions on the quantity of damages and attorneys' fees to which Plaintiff is entitled.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Cai's motion to dismiss is **GRANTED** and he will be dismissed without prejudice. Plaintiff's motion for default judgment is **GRANTED** as to

[6] Due to the deficiency of proof as to the wage-based claims for relief, the Court does not address the evidence provided in support of attorneys' fees and costs. ECF 12, at 6. This question will also be referred to a Magistrate Judge for resolution.

liability and will be referred to a Magistrate Judge for the calculation of damages and attorneys' fees.

A separate implementing Order will issue.

Dated: August 25, 2026

/s/
Brendan A. Hurson
United States District Judge